Neil J. McNabnay, *pro hac vice*
Texas Bar No. 24002583
mcnabnay@fr.com
Ricardo J. Bonilla, *pro hac vice*
Texas Bar No. 24082704
rbonilla@fr.com
Michael A. Vincent, *pro hac vice*
Texas Bar No. 24105738
vincent@fr.com
FISH & RICHARDSON, P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Michael R. Headley (SBN 220834)
*headley@fr.com*
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Defendant
Afterlight Collective, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rothschild Patent Imaging, LLC,** | Case No. 2:23-cv-00456-DJC-JDP |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| **Afterlight Collective, Inc.,** | Date: July 6, 2023 |
| Defendant. | Time: 1:30 p.m. |
| | Courtroom: 10 (13th Floor) |
| | Judge: Daniel J. Calabretta |
| | Trial Date: |
| | Action Filed: March 10, 2023 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 6, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Court, Defendant will, and hereby does, bring this Rule 12(c) Motion for Judgment on the Pleadings on the following grounds:

1. RPI fails to plausibly allege that the accused product employs a "transfer criteria."

2. The asserted U.S. Pat. No. 8,437,797 is patent-ineligible under  35 U.S.C. § 101.

Accordingly, Defendant moves this Court to dismiss Plaintiff's Complaint without leave to amend. This Motion is based on this Notice, the accompanying Brief in Support, the pleadings, papers and records on file in this action, and on all such further oral or documentary evidence or argument as may be presented at the hearing on the Motion.

Dated: April 20, 2023

Respectfully submitted,

FISH & RICHARDSON P.C.

By:  */s/ Michael A. Vincent*
      Michael A. Vincent

Attorney for Defendant
Afterlight Collective, Inc.

# **TABLE OF CONTENTS**

I.  Statement of the Facts ........................................................................................ 2

II.  Legal Standards ................................................................................................. 3

    A.  Rule 12(c) ................................................................................................... 3

    B.  35 U.S.C. § 101 .......................................................................................... 5

III.  Argument............................................................................................................ 6

    A.  RPI Fails to State a Claim Because It Does Not Plausibly
       Allege the Accused Product Uses a "Transfer Criteria." ........................... 6

    B.  The '797 Patent's Claims are Invalid Under 35 U.S.C.
       § 101. .......................................................................................................... 8

         1.  Step 1: The Claims of the '797 Patent are Directed
            to the Abstract Idea of Receiving, Filtering, and
            Transmitting Images. ...................................................................... 8

         2.  Step 2: The Claims of the '797 Patent Fail to Recite
            Any Inventive Concept. ................................................................... 14

IV.  Conclusion ........................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) .................................................................................13

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
573 U.S. 208 (2014) ......................................................................................................5

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011) ...................................................................................8

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) .................................................................................13

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
2013 WL 12129652 (C.D. Cal. Nov. 19, 2013) ..........................................................4

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017) ...................................................................................8

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
687 F.3d 1266 (Fed. Cir. 2012) ...................................................................................5

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ..........................................................................10, 14

*Bilski v. Kappos*,
561 U.S. 593 (2010) ...................................................................................................5, 6

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019), *cert. denied*, No. 19-1299 ......................................9

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012)......................................................................................4

*Coinstar, Inc. v. Coinbank Automated Sys., Inc.*,
998 F. Supp. 1109 (N.D. Cal. 1998) ...........................................................................4

*Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) .................................................................................13

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ...................................................................................6

*Dealertrack Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012) ...................................................................................8

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980) ......................................................................................................5

*Diamond v. Diehr,*
   450 U.S. 175 (1981) ......................................................................................................6

*EasyWeb Innovations, LLC v. Twitter, Inc.,*
   689 F. App'x 969 (Fed. Cir. 2017) ...............................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016) ..............................................................................9, 13

*Enfish, LLC v. Microsoft Corp.,*
   822 F.3d 1327 (Fed. Cir. 2016) ...................................................................................9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
   955 F.3d 1317 (Fed. Cir. 2020) .................................................................................10

*F5 Networks, Inc. v. Radware, Inc.,*
   No. 17-CV-03166-VC, 2018 WL 6039873 (N.D. Cal. Nov. 19, 2018) ........................8

*Fort Props., Inc. v. Am. Master Lease LLC,*
   671 F.3d 1317 (Fed. Cir. 2012) ...................................................................................6

*Heliotrope Gen., Inc. v. Ford Motor Co.,*
   189 F.3d 971 (9th Cir. 1999).........................................................................................4

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
   792 F.3d 1363 (Fed. Cir. 2015) .................................................................................14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
   850 F.3d 1332 (Fed. Cir. 2017) ...................................................................................9

*Mace v. Ocwen Loan Servicing, LLC,*
   16-cv-05840-MEJ, 2018 WL 368601 (N.D. Cal. Jan. 11, 2018)..................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012) ..................................................................................................6

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
   521 F.3d 1097 (9th Cir. 2008).......................................................................................4

*NetFuel, Inc. v. Cisco Sys. Inc.,*
   2018 WL 4510737 (N.D. Cal. Sept. 18, 2018) ............................................................4

*Parker v. Flook,*
    437 U.S. 584 (1978) ...............................................................................................6

*Prime Focus Creative Servs. Canada Inc. v. Legend3D, Inc.,*
    2015 WL 12746207 (C.D. Cal. Sept. 23, 2015) ...........................................4

*SAP Am., Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018) ..............................................................8

*Secure Cam, LLC v. Tend Insights, Inc.,*
    351 F. Supp. 3d 1249 (N.D. Cal. 2018) ...........................................11, 12

*TLI Communications, LLC v. AV Automotive LLC,*
    823 F.3d 607 (Fed. Cir. 2016) .................................................10, 11, 14

*Ultramercial, Inc. v. Hulu,*
    LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ..................5, 9

*United States v. 14.02 Acres of Land More or Less in Fresno Cty.,*
    547 F.3d 943 (9th Cir. 2008)..................................................................4

**Statutes**

35 U.S.C. § 101 ..................................................................................5, 8, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................................3, 4

Defendant Afterlight Collective, Inc. moves for judgment on the pleadings that Plaintiff Rothschild Patent Imaging, LLC's Complaint fails to state a claim based on two independent grounds.

First, RPI does not plausibly allege that the accused product, Afterlight's mobile app, employs a "transfer criteria" as claimed by the asserted U.S. Patent. No. 8,437,797. The specification, prosecution record, and litigation history definitively show that transferring images using the purported invention cannot rely on manual selection of images. Because RPI alleges infringement based on manual selection of images, it fails to state a claim for relief. (*See* Dkt. 1-2 at 7 (allegation that Afterlight app users receive images "using transfer criteria (e.g., users select the images they wish to share)").)

Second, the claims of the '797 Patent are directed to the abstract idea of receiving, filtering, and transmitting images, and they do not claim any inventive concept beyond that abstract idea sufficient to confer patent eligibility. The specification acknowledges that the claimed image capturing devices can be "virtually any device structured to capture one or more digital images." '797 Patent at 3:47-48. The images may be then filtered "via object recognition, locational information, time, date, image name, etc." to "determine which, if any, are in fact communicated." *Id.* at 2:41-43, 9:52-58. Finally, transmission of the photographs is done using admittedly conventional methods, including "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')." *Id.* at 3:29-31. The '797 Patent therefore claims the practice of an abstract idea using conventional technology.

Plaintiff's allegations, even when presumed true, fail to state a claim for relief. Afterlight therefore requests that the Court enter judgment on the pleadings that Plaintiff fails to state a claim upon which relief can be granted, and dismiss the Complaint with prejudice.

1  **I.**      **Statement of the Facts**

2          On March 10, 2023, RPI filed a Complaint accusing Afterlight of infringing U.S.

3  Patent No. 8,437,797, entitled "Wireless Image Distribution System and Method." (Dkt. 1

4  at ¶ 22.) Afterlight filed its Answer, Affirmative Defenses, and Counterclaims on April 6,

5  2023. (Dkt. 6.)

6          The claims of the '797 Patent are "directed to a system and method for distributing

7  at least one digital photographic image from a capturing device . . . to one or more

8  receiving devices, wherein the receiving device(s) is cooperatively structured to

9  automatically and/or selectively receive the digital photographic image(s) from the

10  capturing device." '797 Pat. at 2:17-24. RPI asserts that Afterlight infringes "at least Claim

11  16 of the '797 Patent." (Dkt. 1 at ¶ 22.) Claim 16 is representative of the '797 Patent's

12  claims and recites:

13          16. A method performed by an image-capturing mobile device, comprising

14              receiving a plurality of photographic images;

15                  filtering the plurality of photographic images using a transfer criteria;

16                      and

17                  transmitting, via a wireless transmitter and to a second image

18                      capturing device, the filtered plurality of photographic images,

19                      wherein

20                  the image-capturing mobile device and the second mobile device

21                      are disposed in a selectively paired relationship with one another

22                      based upon an affinity group associated with the second mobile

23                      device.

24  '797 Pat. at 14:52-62. Claim 16 is directed to a method of receiving images, filtering the

25  images based on their content, and transmitting the filtered images between devices.

26          The specification discloses only generic computer components in functional terms.

27  For example, the capturing devices are described as "generally compris[ing] **virtually**

28
                                                    DEFENDANT'S MOTION FOR
                                                    JUDGMENT ON THE PLEADINGS
                                                    Case No. 2:23-cv-00456-DJC-JDP

**any device** structured to capture one or more digital photographic images," including "a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc., having the structures and/or mechanism capable of capturing digital photographic images." '797 Pat. at 3:45-58 (emphasis added). The display assembly can be anything "structured and disposed to display to a user thereof various data, images, etc.[, and] may be virtually any size and may include **virtually any display device**, including but not limited to a liquid crystal display ('LCD')." *Id.* at 4:4-8 (emphasis added). The electronic storage medium can be anything "structured to electronically store the one or more digital photographic images thereon," and may include "an internal hard drive or other like mechanism," or "a removable memory card, Universal Serial Bus ('USB') drive, Firewire drive, flash drive, etc." *Id.* at 4:26-8, 4:34-36.

The transmission technology relied upon is likewise generic. For example, the specification discloses that the claimed invention uses known modes of wireless transmission, including "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')." *Id.* at 3:29-31. The modes of communication are virtually unbounded because they may also "comprise a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." *Id.* at 3:37-40. Finally, the specification provides that the crux of the alleged invention—image filtering—may be carried out by "object recognition software or other mechanism(s) for identifying objects or individuals within a captured image." *Id.* at 9:6-10. Neither the specification nor the claims discloses **how** any such recognition software might work, relying instead on others to develop that technology.

## II.   Legal Standards

### A.  Rule 12(c)

In the Ninth Circuit, the standard for deciding a Rule 12(c) motion "is functionally identical" to the standard for deciding a motion to dismiss under Federal Rule of Civil

1  Procedure 12(b)(6). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047,

2  1055 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192

3  (9th Cir. 1989)); accord *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

4  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

5  complaint that fails to state a claim upon which relief can be granted. "Dismissal under

6  Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or

7  sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med.*

8  *Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint 'need not contain detailed

9  factual allegations' to survive a Rule 12(b)(6) motion, 'it must plead enough facts to state

10  a claim to relief that is plausible on its face.'" *Mace v. Ocwen Loan Servicing, LLC*, 16-cv-

11  05840-MEJ, 2018 WL 368601, *2 (N.D. Cal. Jan. 11, 2018) (quoting Cousins v. Lockyer,

12  568 F.3d 1063, 1067–68 (9th Cir. 2009) (internal quotation marks and citations omitted)).

13  "A claim is facially plausible when it 'allows the court to draw the reasonable inference

14  that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556

15  U.S. 662, 678 (2009) (internal quotation marks omitted)).

16  "When considering a motion for judgment on the pleadings, [a] court may consider

17  facts that 'are contained in materials of which the court may take judicial notice.' "

18  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). "Judicial

19  notice is appropriate for records and 'reports of administrative bodies.'" *United States v.*

20  *14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008). This

21  includes documents issued by the Patent Office, such as a patent's prosecution history or

22  the record of its *inter partes* review. *See Prime Focus Creative Servs. Canada Inc. v.*

23  *Legend3D, Inc.*, 2015 WL 12746207, at *2 (C.D. Cal. Sept. 23, 2015); *NetFuel, Inc. v.*

24  *Cisco Sys. Inc.*, 2018 WL 4510737, at *2 n.1 (N.D. Cal. Sept. 18, 2018); *Audionics Sys.,*

25  *Inc. v. AAMP of Fla., Inc.*, 2013 WL 12129652, at *2 (C.D. Cal. Nov. 19, 2013); *Coinstar,*

26  *Inc. v. Coinbank Automated Sys., Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998).

27

28

1

### B.  35 U.S.C. § 101

2     Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at

3 602. Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is

4 apparent from the face of the patent that the asserted claims are not directed to eligible

5 subject matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718-19 (Fed. Cir. 2014)

6 (Mayer, J., concurring). In those situations, claim construction is not required to conduct a

7 § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed.

8 Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable

9 prerequisite to a validity determination under § 101.").

10     Section 101 of the Patent Act sets forth four categories of patentable subject

11 matter: "any new and useful process, machine, manufacture, or composition of matter."

12 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of

13 nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S.

14 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection

15 because a monopoly over these ideas would preempt their use in all fields. *Bilski v.*

16 *Kappos*, 561 U.S. 593, at 611-12 (2010). In other words, "abstract intellectual concepts

17 are not patentable, as they are the basic tools of scientific and technological work." *Id.* at

18 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

19     Determining whether a patent claim is impermissibly directed to an abstract idea

20 involves two steps. First, the court determines "whether the claims at issue are directed

21 to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208,

22 218 (2014). Second, if the claim contains an abstract idea, the court evaluates whether

23 there is an 'inventive concept'—*i.e.*, an element or combination of elements that is

24 sufficient to ensure that the patent in practice amounts to significantly more than a patent

25 upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

26     Transformation into a patent-eligible application requires "more than simply stating

27 the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo Collaborative*

28

1  *Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could

2  be performed in the human mind, or by a human using pen and paper, it is not patent-

3  eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir.

4  2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre-

5  or post-solution activity—such as identifying a relevant audience, category of use, field of

6  use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S.

7  at 610; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S.

8  584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high

9  level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make

10  those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort*

11  *Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a

12  broad and general limitation does not impose meaningful limits on the claim's scope.").

13  **III.**   **Argument**

14     **A.  RPI Fails to State a Claim Because It Does Not Plausibly Allege the**
15     **Accused Product Uses a "Transfer Criteria."**

16     RPI alleges in its Complaint that Afterlight's mobile app "allows users to filter a

17  plurality of photographic images (e.g., mobile device's photo gallery) using transfer

18  criteria (e.g., users select the images they wish to share)." (Dkt. 1-2 at 7.) This

19  construction of "transfer criteria" being a manual process is counter to the specification

20  and to Patent Owner's arguments made before the Patent Office.

21     The specification teaches that the device may comprise a transfer criteria, but if it

22  does, then that transfer criteria must be pre-defined. *See* '797 Patent at Abstract

23  ("Further, the at least one digital photographic image may be filtered via at least one pre-

24  defined transfer criteria disposed on the capturing device and/or receiving device."); 2:38-

25  40 ("[T]he present invention may include one or more transfer criteria disposed on the

26  capturing device and/or receiving device."); 9:35-37 ("[T]he capturing device 20 may

27  comprise or otherwise be associated with one or more pre-defined transfer criteria 70.").

28

1  Figure 7 reinforces this by depicting the pre-defined transfer criteria 70 as software code

2  disposed on the capturing device.



FIGURE 7

10      Rothschild Storage Retrieval Innovations, LLC, the assignee of the '797 Patent

11  immediately preceding Plaintiff RPI, previously advocated for this construction of the term

12  "transfer criteria." *See* Ex. A at 10-16. Upon information and belief, the two entities are

13  commonly controlled by Leigh M. Rothschild. *See* Ex. B (patent assignment showing Mr.

14  Rothschild signing as the Managing Partner or Authorized Person of ten entities). RSRI

15  argued that "manual selection" could not satisfy this limitation:

16        The embodiments within the '797 patent specifically disclose a "pre-
        defined" transfer criteria that is used to filter the images to create a subset
17        of images that can be communicated. '797 patent Abstract; col. 9 ll. 35-58;
        col. 12 ll. 35-38. In this way, "filtering" is distinguished from manual selection
18        by establishing an automated or pre-selected method of culling images to
        be transferred—and for that automation to have any import, it must be "pre-
19        defined" rather than manual after the images are collected or captured.
20

21        More specifically, the embodiments state the transfer criteria may be
        defined ***prior*** to the communication of the images. '797 patent col. 9 ll. 35-
22        58 ("Thus, prior to the communication of the digital photograph image(s) 25
        from the capturing device 20 to the receiving device 30, the image(s) 25 is
23        compared to the transfer criteria 70."); col. 12 ll. 35-38 ("In particular, the
        transfer criteria may be associated with the capturing device and/or
24        receiving device, and may be defined prior to communication of the
25        image(s) to the receiving device."). This is the purpose of the invention: "for
        instantaneous, automatic, and/or selective distribution of images
26        therebetween." '797 patent col. 2 ll. 6-7, 8-12.
27

1    Ex. A at 11-12 (emphasis in original).

2          RPI's proposed construction is further foreclosed by arguments that the Patent

3    Owner made during *inter partes* review of the '797 Patent. In its April 20, 2015

4    Preliminary Response, the Patent Owner proposed construing the term "transfer criteria"

5    in the same way: "a pre-defined criteria for filtering the images." Ex. C at 11. As the

6    Federal Circuit has held, "statements made by a patent owner during an IPR proceeding,

7    whether before or after an institution decision, can be considered for claim construction

8    and relied upon to support a finding of prosecution disclaimer." *Aylus Networks, Inc. v.*

9    *Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017). Here, the Patent Owner's arguments

10   have disclaimed claim scope, even though the PTAB declined to adopt the proposed

11   construction. *See Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336

12   (Fed. Cir. 2011); *F5 Networks, Inc. v. Radware, Inc.*, No. 17-CV-03166-VC, 2018 WL

13   6039873, at *1 (N.D. Cal. Nov. 19, 2018) (disclaimer applies "[e]ven if the PTAB may not

14   have expressly adopted [Patent Owner's] interpretation"). Thus, the transfer criteria

15   element cannot be satisfied by a user's ad-hoc preferences via manual selection of

16   images.

17         Because RPI does not allege that the Afterlight app employs a pre-defined transfer

18   criteria, but instead relies on a manual selection process that was disclaimed, it fails to

19   state a claim for relief.

20         **B.  The '797 Patent's Claims are Invalid Under 35 U.S.C. § 101.**

21         The '797 Patent's invalidity presents a second, independent ground for dismissal.

22         **1.        Step 1: The Claims of the '797 Patent are Directed to the Abstract**
              **Idea of Receiving, Filtering, and Transmitting Images.**
23

24         Step one of the *Alice* inquiry requires an examination of the claims to determine

25   whether their "focus" or "character as a whole" is directed to excluded subject matter.

26   *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *see also*

27   *Dealertrack Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent

28

1    eligibility under § 101, one must focus on the claims."). The goal of this examination is to

2    identify the basic concept at the "heart" of the claims. *See Ultramercial*, 772 F.3d at 714-

3    15 (abstract idea at the "heart" of the eleven step claim was using advertising as an

4    exchange or currency). For computer-implemented claims, "the first step of the *Alice*

5    inquiry . . . asks whether the focus of the claims is on specific asserted improvements in

6    computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are

7    invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed.

8    Cir. 2016).

9         As is evident from its face, the '797 Patent claims the combination of two ideas

10   that the Federal Circuit has repeatedly held to be abstract—data communication and data

11   manipulation—and invokes generic computer components used in their conventional

12   manner to practice these ideas. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830

13   F.3d 1350, 1353 (Fed. Cir. 2016) ("Information as such is an intangible. Accordingly, we

14   have treated collecting information, including when limited to particular content (which

15   does not change its character as information), as within the realm of abstract ideas.")

16   (collecting cases); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332,

17   1340 (Fed. Cir. 2017) (finding patent claim "directed to . . . collecting, displaying, and

18   manipulating data" abstract); *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x

19   969, 971 (Fed. Cir. 2017) ("As we have explained in a number of cases, claims involving

20   data collection, analysis, and publication are directed to an abstract idea.").

21        As to the first idea, data communication, the claims rely heavily on technical-

22   sounding terms that ultimately amount to sending and receiving information. For

23   example, Claim 16 requires "transmitting, via a wireless transmitter," but "the broad

24   concept of communicating information wirelessly, without more, is an abstract idea."

25   *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019),

26   *cert. denied*, No. 19-1299. The claims' use of "technical jargon" such as "receiver" and

27   "transmitter" is no savior because "[c]laims do not become eligible simply because they

28                                              DEFENDANT'S MOTION FOR
                                                JUDGMENT ON THE PLEADINGS
                                                Case No. 2:23-cv-00456-DJC-JDP

are written or characterized in a 'highly technical' manner." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 at n.2 (Fed. Cir. 2020) (finding error in a district court's reasoning that certain claims' "highly technical" nature supports the conclusion that they are not directed to an abstract idea).

As to the second idea, data filtering also does not save the claims because the Federal Circuit has held that this too is an abstract idea. The claims of the '797 Patent require filtering photographs "using a transfer criteria." '797 Pat. at Independent Claims 1, 5, 6, 8, 9, 13, 16. Filtering photographs is a form of data manipulation because it involves organizing information (photographs) according to a rule (*e.g.*, the "title of the image(s) 25, subject matter of the image(s) 25, and/or any of the other data component(s) of the digital photographic image(s) 25 . . ." '797 Pat. at 6:28-30). This is an abstract idea that people have long performed without the aid of technology. *See, e.g.*, *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("[F]iltering content is an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract.") For example, it is common practice to receive a collection of photographs (*e.g.*, a stack of Polaroids), pick certain ones depending on their content (*e.g.*, pictures of one's child), and forward those selected photographs onward (*e.g.*, to the child's grandparents).

Several cases are particularly applicable to the claims at hand. In *TLI*, the asserted patent claimed a method of "manually or automatically" assigning "classification data . . . to digital images and sending those images to a server [that] extracts the classification data and stores the digital images, 'taking into consideration the classification information.'" *TLI Communications, LLC v. AV Automotive LLC*, 823 F.3d 607, 610 (Fed. Cir. 2016). Representative Claim 17 from the *TLI* patent is similar to the claims at issue here:

17. A method for recording and administering digital images, comprising the steps of:

recording images using a digital pick up unit in a telephone

    unit;

storing the images recorded by the digital pick up unit in a

    digital form as digital images;

transmitting data including at least the digital images and

    classification information to a server, wherein said

    classification information is prescribable by a user of the

    telephone unit for allocation to the digital images;

receiving the data by the server;

extracting classification information which characterizes the

    digital images from the received data; and

storing the digital images in the server, said step of storing

    taking into consideration the classification information.

*Id.* The Federal Circuit held that Claim 17 was drawn to the abstract idea of "classifying an image and storing the image based on its classification." *Id.* at 611. The recited physical components—"a telephone unit" and a "server"—"merely provide a generic environment in which to carry out this abstract idea," not "a specific improvement to computer functionality." *Id.* at 611-12. "The specification [also] fail[ed] to provide any technical details for the tangible components, but instead predominantly describes the system and methods in purely functional terms," making them "merely conduits for the abstract idea." *Id.* at 612.

Judge Davila of the Northern District of California followed *TLI* to invalidate electronic imaging patents that claimed similar abstract ideas. *See Secure Cam, LLC v. Tend Insights, Inc.*, 351 F. Supp. 3d 1249, 1251 (N.D. Cal. 2018). The *Secure Cam* patents related to "[a] system and method for the automatic analysis and categorization of images in an electronic imaging device" in which an "analysis module generates any

appropriate image tags and stores the generated tags into a blank category tag location in the image file." *Id.* at 1251-52. The court found the below claim to be representative:

> 1. A digital camera for automatically categorizing captured image data, the digital camera comprising:
>
> > a processor within the digital camera for capturing image data;
> >
> > an analysis module within the digital camera coupled to the processor and configured to perform image data analysis on the captured image data at the time of image capture by the digital camera and to automatically generate, responsive to the preformed image data analysis, a category tag for the captured image data; and
> >
> > a memory for storing the generated category tag in association with the captured image data for categorizing the captured image data.

*Id.* at 1252-53 (quoting U.S. Pat. No. 8,350,928 at 9:4-16). The court determined that the *Secure Cam* patents related to "collecting digital images, analyzing them and categorizing them." *Id.* at 1254. This categorization could include generating a tag comprising a "person, group of people, nature scene, cityscape, waterscape or indoor image." *Id.*; *compare with* '797 Pat. at 9:10-11 (images may be tagged with "data corresponding to the subject matter, theme, or topic thereof"). Despite reciting physical components (a "digital camera," "processor," and "memory"), the Court held the claims to be "directed to the abstract idea of analyzing and automatically categorizing digital images." *Id.* at 1255. The requirement of an "analysis module" was insufficient as well because it was "described in purely functional terms as a component configured to perform image data analysis and to automatically generate a category tag." *Id.* The '797

Patent's claims fare no better because they too recite purely functional limitations performed by generic hardware.

Similarly, in *Content Extraction*, the Federal Circuit held that "the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). The court held that the "concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* The claims of the '797 Patent are similarly unbounded in their recitation of receiving data, filtering data, and transmitting data, and are likewise directed to this abstract idea.

Although the specification alludes to "object recognition software or other mechanism(s) for identifying objects or individuals within a captured image," it fails to teach how such software would work, and the claims do not include any specific implementation thereof. '797 Pat. at 9:6-8. Consequently, they are directed to the idea of filtering images itself. *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) ("There is nothing in claim 1 that is directed to how to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself."); *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding ineligible claims that do not recite "a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems."). Moreover, "[the Federal Circuit has] treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power*, 830 F. 3d at 1354. Therefore, filtering images is an ineligible abstract idea. The '797 Patent's claims fail step one because they are directed to this abstract idea and invoke generic computer components only as a means for implementing it.

**2. Step 2: The Claims of the '797 Patent Fail to Recite Any Inventive Concept.**

Because the claims of the '797 Patent are directed to a patent-ineligible abstract idea, the Court must consider the second step of the *Alice* test. This step requires the Court to decide "whether the remaining elements, either in isolation or in combination with the non-patent-ineligible elements, are sufficient to transform the nature of the claim into a patent-eligible application." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366-67 (Fed. Cir. 2015). When looking at computer-related technology such as that recited in the '797 Patent, courts determine whether there are "specific improvements in the recited technology that go beyond 'well-understood, routine, conventional activities' and render the invention patent-eligible." *BASCOM*, 827 F.3d at 1349 (citing *Alice*, 134 S. Ct. at 2359).

Nothing in the claims amounts to something "significantly more" than the abstract idea of filtering images such that the claims rise above this abstract idea because they rely entirely on conventional components performing in a conventional manner. *See, e.g.*, '797 Pat. at Claim 1 ("a wireless receiver," "a wireless transmitter," "a processor," "receive a plurality of photographic images"). These components merely provide a generic environment in which "well-understood, routine, activities previously known to the industry" are used to carry out the abstract idea of receiving, filtering, and transmitting images. *See TLI*, 823 F.3d at 614 (original brackets omitted).

For example, the specification states that a capturing device "generally comprises **virtually any device** structured to capture one or more digital photographic images," including "a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc., having the structures and/or mechanism capable of capturing digital photographic images." *Id.* at 3:45-58 (emphasis added). The specification does not discuss the "wireless transmitter" or the "wireless receiver" recited in Claim 1, 5, 6, and 8 in any detail. What it does describe—in purely functional terms,

and in well-known examples—is the modes of wireless transmission that may be used in the claimed invention, listing "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')," or other "wireless network(s) and/or communication protocol" such as "a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols."  *See id.* at 3:29-40.

In sum, the claimed elements of the '797 Patent, individually and as an ordered combination, do not transform the claims into patent-eligible subject matter because they behave exactly as expected according to their normal use, and in a well-understood, routine, and conventional manner.

**IV.**   **Conclusion**

RPI fails to state a claim because (A) it does not plausibly allege the Afterlight app uses a "transfer criteria," and (B) asserted U.S. Patent No. 8,437,797 is directed to patent-ineligible subject matter. Afterlight respectfully requests that the Court dismiss RPI's Complaint with prejudice.

1    Dated: April 20, 2023                    Respectfully submitted,

2

3                                             FISH & RICHARDSON P.C.

4

5                                             By: /s/ Michael A. Vincent
                                                  Michael A. Vincent
6

7                                             Attorney for Defendant
                                              Afterlight Collective, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            DEFENDANT'S MOTION FOR
                                              JUDGMENT ON THE PLEADINGS
                                              Case No. 2:23-cv-00456-DJC-JDP